# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 08-CV-299 (JFB)
_____

## RAMON E. MERCEDES,

Petitioner,

### VERSUS

## LEO P. MCGUIRE, BERGEN COUNTY SHERIFF,

Respondent.

_____

**MEMORANDUM AND ORDER**
May 12, 2010
_____

JOSEPH F. BIANCO, District Judge:

Ramon E. Mercedes (hereinafter "petitioner" or "Mercedes") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was convicted in a judgment rendered on July 21, 2005, following a jury trial in County Court, Nassau County. Petitioner was convicted of sexual abuse in the first degree [N.Y. Penal Law § 130.65(1)] and assault in the third degree [N.Y. Penal Law § 120.00(1)] and was sentenced to ten years of probation for the sexual abuse conviction and to "time served" and three years of probation for the assault conviction, to be served concurrently.

Petitioner challenges his conviction on the following ground: the state violated petitioner's rights under the Due Process Clause of the Fourteenth Amendment when the trial court admitted evidence regarding threatening communications and gestures that the defendant made towards the victim in the weeks and months before the assault.

For the reasons stated below, petitioner's request for a writ of habeas corpus is denied in its entirety on the merits.

## I. BACKGROUND

The Court has adduced the facts below from the instant petition and the state court record in this case.

### A. Facts

In approximately February 2004, Mercedes

and his victim (hereinafter "KJ")[1] began dating. (Tr. at 131-32.)[2] Mercedes was then 41 years old, and KJ was 22 years old. (*Id*. at 135.) Although they lived in the same apartment building, they would go to motel rooms to "sit and talk" because Mercedes lived with his mother and KJ lived with her family and friends. (*Id*. at 134-35, 192-93, 332, 375-76.) While their relationship was intimate in that they kissed and hugged, they never engaged in sexual intercourse, as per KJ's request. (*Id*. at 134, 136.)

In June 2004, KJ told Mercedes that she wanted to end their relationship because he was married and had children, he was too old for her, her mother disapproved of their relationship, and she neither wanted to be with or have sex with him. (*Id*. at 135-36.) In response, Mercedes became angry. (*Id*. at 136-37.) Subsequently, Mercedes (1) left messages on KJ's phone in which he threatened to kill her if she did not resume their relationship; (2) made a throat-slashing gesture by looking at KJ and slicing his hand across his throat; and (3) grabbed KJ's face and told her that she would "be his." (*Id*. at 137-42.) These acts occurred at different times between June and July of 2004. (*Id*.)

In response to petitioner's threatening phone calls, KJ called back to tell him that his behavior frightened her and to stop leaving such messages. (*Id*. at 138-39, 142.) Occasionally, KJ had to call Mercedes many times before she could reach him. (*Id*. at 138, 246-47.) Around July 10, 2004, KJ reported petitioner's threatening phone calls to the police. (*Id*. at 139, 201, 247.)

On July 31, 2004, KJ spoke to Mercedes on the telephone. (*Id*. at 144-45.) He was behaving "good," so she agreed to meet with him the next day in order to discuss their relationship problems. (*Id*. at 144-45, 216.) When they met on August 1, 2004, Mercedes suggested that they go to a motel room, to which KJ agreed. (*Id*. at 145, 219.)

Inside the motel room, KJ told Mercedes that she wanted to end their relationship. (*Id*. at 146, 226, 253.) In response, Mercedes asked if he could kiss her. (*Id*. at 146, 226, 253.) When KJ said "no," Mercedes "went after her." (*Id*. at 146.) He threw her on the bed, shook her, choked her, and demanded sex from her. (*Id*. at 146-47.)

When KJ refused to have sex with him, Mercedes removed his clothes and ripped off her shorts with such force that he tore off the buttons fastening the shorts together, along with her underpants. (*See id*. at 149.) He also removed her sanitary napkin, even though she was menstruating. (*Id*. at 147.) Mercedes grasped KJ's neck with one hand, while fondling her private parts with his other hand. (*Id*. at 149, 175.) He put his penis "on top" of her vagina, but there was no penetration. (*Id*. at 149-50.) KJ repeatedly told Mercedes to stop, but he ignored her pleas. (*Id*. at 150.)

Only when KJ could not breathe and became nauseated did Mercedes stop his sexual attack, after which KJ vomited. (*Id*. at 150-51.) KJ asked Mercedes to take her to the hospital. (*Id*. at 151.) He agreed that he would, but only if she did not tell hospital personnel about what had happened at the motel. (*Id*. at 151.) Petitioner also told KJ

---

[1] To protect the victim's privacy, the Court refers to her only as "KJ."

[2] "Tr." refers to the transcript of the trial proceedings in the underlying state criminal action.

that they needed to go to a store to buy KJ new clothes before they went to the hospital. (*Id*. at 152.)

When KJ and Mercedes arrived at a nearby clothing store, Mercedes got out of his car and walked towards the store. (*Id*. at 153-54.) During his absence, KJ called 911 on her cellular phone, told the operator that someone had tried to rape her, and pleaded for help. (*Id*.) Her call was cut short, however, because the clothing store was closed, and Mercedes quickly returned to the car. (*Id*. at 154, 236.) Mercedes then drove to another nearby clothing store and walked out of his car. (*Id*. at 154.) During his absence, KJ ran out of the car and fled through the parking lot and across a street, setting off the car alarm in the process. (*Id*. at 155-56.) She called 911 again, told the operator that someone had tried to rape her, and begged for help and medical assistance. (*Id*. at 156.) She informed the operator of her whereabouts while remaining in hiding. (*Id*. at 157-58.)

When two police officers arrived at the scene, they saw that KJ was crying, was "quite hysterical," and appeared fearful and disheveled. (*Id*. at 259, 285.) They observed that she was holding up her unzipped, button-less shorts (which were bloody). (*Id*. at 259-64, 285-87.) Also, her arms and shoulders appeared red. (*Id*. at 287.) KJ was taken to a hospital by ambulance. (*Id*. at 261-62.) The hospital report indicated that KJ had contusions on her neck and chest, her chest was "tender," her neck and part of her chest were swollen, and she was suffering from neck pain. (*Id*. at 163-64, 400, 470.) KJ was in pain for approximately two weeks because she could not lift her arm above her, and she was unable to work. (*Id*. at 160-61, 242-43.)

B. Procedural History

Petitioner was charged with sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(1), assault in the third degree in violation of N.Y. Penal Law § 120.00(1), and attempted rape in the first degree in violation of N.Y. Penal Law §§ 110.00/130.35(1).

After a trial, a jury convicted petitioner on the sexual abuse and assault charges, but acquitted him on the attempted rape charge. During the course of the trial, the court allowed the prosecution to introduce evidence that, in the weeks and months before the assault, petitioner (1) threatened to kill KJ if she did not resume their relationship; (2) had made a slashing movement with his hand across his throat while KJ watched; and (3) had grabbed KJ's face and told her that she would "be his" (hereinafter "the prior bad acts"). On July 21, 2005, petitioner was sentenced to a determinate term of ten years of probation for the sexual abuse conviction and to "time served" and three years of probation for the assault conviction.

Petitioner appealed his conviction to the Appellate Division, Second Department, claiming that: (1) the verdict was against the weight of the evidence; (2) the admission of evidence of the prior bad acts violated his due process rights and his right to a fair trial; (3) the evidence was insufficient to sustain his assault conviction; (4) tapes of the victim's calls to 911 should not have been admitted into evidence; and (5) the trial court improperly directed the jury to speculate on the meaning of "contusion." The Appellate Division affirmed the judgment of conviction in a decision and order dated June 26, 2007. The court held that: (1) the verdict of guilt on the charges of sexual abuse in the first degree

and assault in the third degree was not against the weight of the evidence; (2) petitioner's contention that the prior bad acts were improperly admitted was without merit; (3) the evidence was legally sufficient to establish the petitioner's guilt of assault in the third degree; (4) the trial court correctly admitted the 911 calls into evidence under the excited utterance exception to the hearsay rule; and (5) petitioner's contention that the trial court improperly directed the jury to speculate on the meaning of "contusion" was unpreserved for appellate review. *See People v. Mercedes*, 837 N.Y.S.2d 580 (App. Div. 2007).

Mercedes then filed an application with the New York Court of Appeals for leave to appeal the Appellate Division's order on the claim regarding the admission of the prior bad acts. On September 26, 2007, the New York Court of Appeals denied petitioner's application for leave to appeal the decision. *People v. Mercedes*, 875 N.E.2d 898 (N.Y. 2007).

On January 22, 2008, Mercedes petitioned this Court for a writ of habeas corpus. Petitioner asserts that the introduction of the prior bad acts evidence violated his rights to due process and to a fair trial. As set forth below, the Court finds petitioner's claim to be without merit. In particular, the Court concludes that the evidence was properly admitted under state law and, even if its admission was erroneous under state law, its admission was not egregious enough to reach the level of constitutional error necessary for habeas relief.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA").

Section 2254 requires that federal courts apply a deferential standard of review to claims that were adjudicated "on the merits" in state court. Specifically, under § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554.

"Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

However, "if the federal claim was not adjudicated on the merits [in state court], 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

In this case, the deferential AEDPA standard of review applies. In its opinion affirming the trial court's judgment, the Second Department stated that "[t]he defendant's contention raised in Point Two of his brief"—i.e., his claim that the introduction of prior bad acts violated his due process and fair trial rights—"is without merit." *People v. Mercedes*, 837 N.Y.S.2d 580, 581 (App. Div. 2007). The state court therefore decided this claim on the merits, and the deferential AEDPA standard of review applies. *Cf. Brown v. Greiner*, 409 F.3d 523, 532-33 (2d Cir. 2005) ("In [petitioner's] case, the Appellate Division ruled that his . . . claim was 'without merit,' which was clearly a decision on the merits . . . . Accordingly, our review . . . falls under the deferential standard of § 2254(d).").

## III. DISCUSSION

### A. Procedural Issues

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)). Here, as respondent acknowledges,[3] petitioner raised his claim regarding the admission of the prior bad acts in his appeal to the Second Department and in his petition for review by the New York Court of Appeals. Moreover, he presented the claim in constitutional terms, asserting that the admission of the evidence violated his "rights to a fair trial and due process." (*See* Resp. Ex. A). Accordingly, petitioner has properly exhausted his claim.[4]

---

[3] (Resp. Mem. of Law at 7.)

[4] Another prerequisite to relief under § 2254 is that the petitioner be "in custody pursuant to the judgment of a state court." Here, although petitioner is in custody in New Jersey pursuant to unrelated proceedings (*see* Resp. Aff. ¶ 13), he did not receive a prison sentence as a result of the Nassau County judgment at issue in the instant habeas petition. Instead, the court sentenced him to probation and time served. Nevertheless, petitioner's sentence of probation suffices to meet § 2254's "in custody" requirement. *See, e.g., Corines v. Warden*, No. 05-CV-2056 (NGG),

## B. Merits

Petitioner contends that the trial court erred in admitting the prior bad acts evidence. As set forth below, this claim is without merit and does not warrant habeas relief.

A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983); *see generally Estelle*, 502 U.S. 62, 67 (1991) ("[H]abeas corpus relief does not lie for errors

---

2008 WL 4862732, at *3 (E.D.N.Y. June 10, 2008); *see also U.S. ex rel. B. v. Shelly*, 430 F.2d 215, 217 n.3 (2d Cir. 1970). Given that petitioner is on probation, the proper respondent is "the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate." Rules Governing § 2254 Cases, Rule 2, 28 U.S.C.A. foll. § 2254 advisory committee's note (1976 adopt.); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996). The current-named respondent, Leo P. McGuire, is the Sheriff of Bergen County, New Jersey and has no apparent connection to the conviction at issue here. *See* Bergen County Sheriff's Office– Sheriff Leo P. McGuire, http://www.bcsd.us/sheriff.shtml (last visited Apr. 27, 2010). Instead, the Court will construe the petition as asserting a claim against the Director of the Nassau County Department of Probation. *See generally* Nassau County Probation Department, http://www.nassaucountyny.gov/agencies/Probatio n/index.html (last visited May 10, 2010) (explaining that department has responsibility for supervising criminal defendants sentenced to probation).

of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must demonstrate that the error deprived him of his right to "a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (internal quotation marks omitted))).

In determining whether a state court's alleged evidentiary error deprived petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003); *Ramos v. Phillips*, No. 104-CV-1472-ENV, 2006 WL 3681150, at *6 (E.D.N.Y. Dec 12, 2006). The Court will now apply this test to the prior bad acts evidence introduced at petitioner's trial.

### 1. The Evidence of Uncharged Crimes and Prior Bad Acts Was Admissible Under New York State Law

Under New York law, "[a] trial court may admit into evidence uncharged crimes when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged." *People v. Till*, 661 N.E.2d 153, 154 (N.Y. 1995). However, "[e]ven then, such evidence is admissible only upon a trial court finding that its probative value for the jury outweighs

the risk of undue prejudice to the defendant." *Id.* (citations omitted). In *People v. Molineux*, 61 N.E. 286 (N.Y. 1901), the New York Court of Appeals stated that "[g]enerally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial. 61 N.E. at 294. However, this list is "illustrative and not exhaustive," *People v. Rojas*, 760 N.E.2d 1265, 1268 (N.Y. 2001), and evidence of uncharged crimes that is necessary to provide "background material" or to "complete the narrative of the episode" may also be admissible. *Till*, 661 N.E.2d at 154 (internal citations omitted).

In the instant case, the evidence was properly admitted under New York law to provide background to the jury to understand the nature of the relationship between KJ and Mercedes. Specifically, the evidence of petitioner's threatening behavior helped explain why KJ met with plaintiff on August 1, 2004 and went to a motel room with him. *Cf. People v. Dorm*, 903 N.E.2d 263, 265 (N.Y. 2009) (finding no error in trial court's admission of evidence of previous arguments and conflicts between victim and defendant because evidence, *inter alia*, "provided necessary background information on the nature of the relationship and placed the charged conduct in context"); *People v. Westerling*, 852 N.Y.S.2d 429, 431 (App. Div. 2008) ("Evidence that defendant grabbed the victim during an argument the night before the incident at issue, leaving a bruise, was relevant to the background of this incident and was probative of her state of mind as well as his intent."); *People v. James*, 797 N.Y.S. 2d 129,

130 (App. Div. 2005) (finding, in homicide case, that evidence of defendant's prior assaults on victim was properly admitted as, *inter alia*, "relevant background material to enable the jury to understand the nature of the defendant's relationship with the decedent"). Moreover, the evidence of the prior bad acts was relevant to refute the defense's theory[5] that KJ went to a motel room with petitioner so that she could engage in sexual relations with him. *Cf. People v. Galloway*, 876 N.Y.S.2d 406, 407 (App. Div. 2009) (finding, in sexual assault case, evidence of defendant's prior assault on victim admissible because evidence "placed the victim's testimony in a believable context and tended to refute defendant's defense"); *People v. Steinberg*, 573 N.Y.S.2d 965, 979 (App. Div. 1991) (finding evidence of defendant's prior assaults on witness admissible "to explain to the jury the background of [witness's] testimony, to make it comprehensible and to enhance its credibility" and noting that "[t]here is ample case law to support the proposition that uncharged crime evidence may be used to support testimony that otherwise might be unbelievable or suspect")*.* Furthermore, any potential unfair prejudice from the admission of the prior bad acts evidence did not outweigh its probative value. In its final charge to the jury the state trial court explained that the alleged prior bad acts were

> no proof whatsoever that [petitioner] possessed a propensity or disposition to commit the crimes charged in this indictment or another crime . . . . [I]t is not offered for such a purpose, nor may you consider that for that purpose. Instead, [the evidence is offered] solely for the purpose of

---

[5] (*See, e.g.*, Tr. at 117.)

describing the nature of the relationship between the defendant and the complaining witness and the complaining witness's state of mind. I charge you that such evidence may be considered by you only for such limited purpose and for none other.

(Tr. 511.) A limiting instruction like this one lessens the potential prejudice of uncharged act evidence. *See, e.g.*, *People v. Asai*, 888 N.Y.S.2d 617, 621 (App. Div. 2009); *People v. Doyle*, 852 N.Y.S.2d 433, 437 (App. Div. 2008) ("Additionally, [the] County Court gave proper and appropriate limiting instructions to the jury concerning the permissible uses of this evidence thus limiting its prejudicial effect."); *James*, 797 N.Y.S 2d at 130 (finding the prejudicial effect of the admission of prior bad acts did not outweigh their probative value, "especially in light of the fact that the trial court properly charged the jury on how to use the prior act evidence in their deliberations"); *see also Wells v. Brown*, No. 06-CV-857 (CBA), 2008 WL 2097612, at *7 (E.D.N.Y. May 15, 2008) (explaining, in context of a habeas petition involving a *Molineux* issue, that the state trial court's limiting instruction lessened the evidence's prejudicial effect). Finally, the trial court did not err under state law by allowing the prosecution to admit the prior bad acts evidence even though the prosecution did not move for the evidence's admission until shortly before jury selection began. *See People v. Ventimiglia*, 420 N.E.2d 59, 63 (1981) (indicating that it is permissible for the prosecutor to move to introduce *Molineux* evidence, *inter alia*, "just before the trial begins or just before the witness testifies"). Thus, the state court was well within its discretion under New York law to admit evidence of the tumultuous relationship between the victim and petitioner.

## 2. Admission of the Evidence Did Not Deprive Petitioner of His Fair Trial or Due Process Rights

Moreover, even assuming the state trial court erred in admitting the evidence, any error did not deprive petitioner of his right to a fair trial. "Due process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Where, as here, the evidence does not relate to an essential element of the charged crimes, its admission will violate due process only when it is "'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" *Id.* (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992)); *see also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (explaining that the evidence must be "crucial, critical, highly significant" (internal quotation marks omitted)). Moreover, even if a constitutional error occurred, it "will merit habeas corpus relief only if it had a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Sierra v. Burge*, No. 06 Civ. 14432 (DC), 2007 WL 4218926, at *6 (S.D.N.Y. Nov. 30, 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Further, in assessing materiality, the Court must view the evidence "objectively

in light of the entire record before the jury." *Collins*, 755 F.2d at 19.

This standard is not met here. The prior bad acts evidence was not "sufficiently material to provide the basis for [petitioner's] conviction" nor did the prior bad acts evidence "remove a reasonable doubt that would have existed . . . without it." *Dunnigan*, 137 F.3d at 125 (quotations and citations omitted). Instead, the jury had overwhelming evidence—beyond the prior bad acts evidence—to conclude that petitioner assaulted and sexually abused the victim on August 1, 2004. KJ's testimony about petitioner's sexual attack in the motel room was supported by physical evidence, medical evidence, and the testimony of two police officers who observed KJ shortly after the incident. The jury also observed KJ's testimony first hand and found her testimony to be credible. *Cf. Tingling v. Donelli*, No. 07 Civ. 1833(RMB)(DF), 2008 WL 4724567, at *9 (S.D.N.Y. Oct. 24, 2008) ("Moreover, in light of the other strong evidence of Petitioner's guilt . . . Petitioner has not shown that the admitted evidence removed a reasonable doubt that otherwise would have existed."); *Clanton v. Rivera*, No. 06 Civ. 4756 (DAB) (AJP), 2008 WL 2839712, at *21 (S.D.N.Y. July 22, 2008) (stating that, even if state court erred in admitting evidence of uncharged robbery, "any such error did not deprive [petitioner] of a fundamentally fair trial, given the strong evidence against him" (collecting cases)). Additionally, the trial court's limiting instruction is further evidence that the state court did not deny petitioner a fundamentally fair trial. *See, e.g.*, *Clanton*, 2008 WL 2839712, at *22 (stating that "[l]imiting instructions have been found to militate against a finding of constitutional error" and collecting cases); *Lockhart v. Brown*, No. 9:05-CV-1166 (GLS), 2008 WL 2397609, at *9 (N.D.N.Y. June 10, 2008) (denying habeas claim regarding introduction of uncharged acts because, *inter alia*, trial court limited testimony prosecutor could elicit regarding the uncharged acts and gave limiting instructions).

In any event, under the deferential AEDPA standard of review, petitioner must show that the state courts' resolution of this issue was contrary to or an unreasonable application of clearly established federal law. Also, as noted above, "clearly established federal law" consists of the holdings—not merely the dicta—of the Supreme Court of the United States. And the Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes. *Parker v. Woughter*, No. 09 Civ. 3843(GEL), 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009) ("Here, petitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment."); *Jones v. Conway*, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law."); *Tingling*, 2008 WL 4724567, at *9 ("Not only would Petitioner's claim fail if analyzed under the Second Circuit precedent cited above, but, under AEDPA, it would also fail . . . as the Supreme Court has not directly held that due process is violated by the introduction at trial of evidence of a defendant's uncharged crimes.").[6]

---

[6] Similarly, to the extent petitioner challenges the introduction of the prior bad acts evidence because he did not learn that it would be

In sum, having carefully analyzed petitioner's claim, the Court concludes that the state court decisions on the issue raised by petitioner were not contrary to, nor an unreasonable application of, clearly established federal law, and petitioner's claim lacks merit and does not provide any ground for habeas relief. Accordingly, the habeas petition must be denied.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. §

2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: May 12, 2010
Central Islip, New York

* * *

Attorney for petitioner is Mitchell Dranow, 114 Old Country Road, Suite 308, Mineola, NY 11501. Attorney for respondent is Kathleen M. Rice, District Attorney, Nassau County, 262 Old Country Road, Mineola, NY 11501 by Tammy J. Smiley and Andrea DiGregorio.

---

introduced until shortly before jury selection, that argument is without merit. Petitioner has not identified any Supreme Court precedent holding that due process requires a criminal defendant to be made aware of the evidence against him by a certain date. In fact, if anything, Supreme Court case law points in the opposite direction. *See Gray v. Netherland*, 518 U.S. 152, 167 (1996) ("A defendant's right to notice of the charges against which he must defend is well established. But a defendant's claim that he has a right to notice of the *evidence* that the state plans to use to prove the charges stands on quite a different footing. We have said that 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.'" (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973) (emphasis in original) (additional citations omitted))); *Weatherford v. Bursey*, 429 U.S. 545, 560 (1977) (stating, in action under 42 U.S.C. § 1983, that plaintiff's fair trial rights were not violated during his criminal trial when prosecutor decided, on the day trial began, to call a witness who plaintiff previously believed was not going to testify against him).